```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------  x
ILANA LAX,                                                    :
                              Plaintiff,                      :
                                                              :        **MEMORANDUM**
                - against -                                   :        **AND ORDER**
                                                              :
YESHIVAH OF FLATBUSH,                                         :        24-CV-8864 (EK)(PK)
                                                              :
                              Defendants.                     :
------------------------------------------------------------  x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Ilana Lax brings federal, state, and city discrimination claims arising from her former employment at Defendant Yeshivah of Flatbush, a Jewish day school located in Brooklyn, NY. (*See* Compl., Dkt. 1.) Defendant has moved to strike two allegations in the Complaint, paragraphs 12 and 24 (the "Two Paragraphs"). ("Motion," Dkt. 10.)

For the reasons stated below, the Motion is denied.

## FACTUAL BACKGROUND

Plaintiff is an Ashkenazi Jew who is over fifty years old. (Compl. ¶ 15.) Prior to her termination in April 2024, Plaintiff was employed by Defendant as Director of Marketing and Communications for approximately nine years. (*Id.* ¶ 16.)

Sometime before May 15, 2024, Plaintiff filed a complaint with the Beth Din of America, a Rabbinical Tribunal, alleging claims of discrimination based on age, retaliation, denial of severance, and breach of contract. ("Beth Din Compl.," Ex. B to the Declaration of Elior Shiloh ("Shiloh Decl."), Dkt. 10-2; *see* Def. Mem. at 1, Dkt. 12-1.)

On May 15, 2024, Plaintiff's then-counsel, Jeffrey Lax, who is also her husband, emailed Defense counsel "as a courtesy to notify him of the imminent filing of an amended complaint with Beth Din." ("Opposition" at 7, Dkt. 14) Plaintiff's counsel wrote that Plaintiff had made her "final settlement proposal" and "**will not negotiate further**," and that "[t]here is no other avenue for

1

settlement discussion" because "we're very far apart in every possible way." (Pl. Emails at 11,[1] Ex. C to the Declaration of Jeffrey Lax ("Lax Decl."), Dkt. 14-3 (emphasis in original).)

On May 23, 2024, at 12:30 p.m., Defense counsel Elior Shiloh called Mr. Lax "without any prior notice" (the "Call"). (Opp. at 2.) The Call was inadvertently recorded on a "Nest Cam" located in Mr. Lax's home office. (*Id.*; *see* Tel. Rec'gs, Ex. B to Lax Decl., Dkt. 14-2.)

Plaintiff alleges that Defense counsel "did not alert [Mr. Lax] that he was calling to discuss a possible settlement." (Opp. at 2.) Instead, Defense counsel began the phone call by informing Plaintiff's counsel that he had reviewed the Beth Din Complaint and asked if he had time to hear the result of his investigation into the allegations in that complaint. (*Id.*) Plaintiff's counsel confirmed that he was available, and Defense counsel proceeded to outline the results of his investigation. (*Id.*)

Defense counsel described at length various explanations for Plaintiff's termination, including Plaintiff's communication, budgetary cuts, and other staff members' perception of her. (Tel. Rec'g 1 at 0:30–3:30.) Defense counsel then described evidence that would rebut Plaintiff's allegations of sexual harassment by one of Defendant's employees. (*Id.* at 3:15–5:55.) He described the contents of documents that Defendant contends demonstrate a non-discriminatory basis for Plaintiff's termination, and offered Plaintiff's counsel an opportunity to review them. (*Id.* at 5:55–8:00.)

While describing Defendant's non-discriminatory reasons for terminating Plaintiff, Defense counsel stated that Plaintiff did not have "deep enough relationships also with understanding the Syrian community going forward." (Tel. Rec'g 2 at :00–10, Dkt. 14-2.) Counsel for both parties then disputed the factual basis for Plaintiff's claims and Defendant's defenses, as well as the strength of each side's case.

Toward the end of the Call, which last approximately thirty minutes, Plaintiff's counsel stated that counsels' arguing about each other's facts was "pointless." (Tel. Rec'g 4 at 3:55.) Defense counsel

---

[1]   Citations to Counsel Emails refer to ECF pagination.

then restated Defendant's prior settlement offer, and Plaintiff's counsel responded, "Go ahead and make an offer; I'm willing to hear another offer." (*Id.* 4:13–4:35.) Defense counsel declined to make another offer but insisted that, despite Plaintiff's prior rejection of it, Plaintiff's counsel relate the prior settlement offer to her again. (*Id.* at 6:13–6:27, 7:03–8:00.) The Call then ended.

Approximately an hour later at 1:50 p.m., Plaintiff's counsel emailed Defense counsel, stating, *inter alia*, that Plaintiff "is not interested in [Defendant's] offer . . . ." (Pl. Emails at 8.) Plaintiff's counsel sent another email shortly thereafter, requesting "to see the documents [Defense counsel] agreed to show [him] during today's conversation." (*Id.* at 8)

Defense counsel responded at 5:04 p.m. via email, stating: "At this point, with your refusal to negotiate in good faith as well as an inappropriate name calling of Rabbi Rothman, we have made the decision to not share any documentation." (*Id.* at 7.)

Plaintiff's counsel replied that evening at 6:50 p.m., writing:

> You have repeatedly initiated and attempted to strong arm my client into the same exact nominal settlement offer, even after we asked you not to offer it and even after we repeatedly rejected it. Finally, in a previous email we told you that we are too far apart and that this was not going to settle. We ended negotiations at that point, because we didn't feel that your clients were in a range that [Plaintiff] would even consider. Still, today you insisted on my taking, yet again, the same exact offer to my client. It is not us initiating settlement talks with you. We felt those were at a hopeless impasse the last time around, and we told you so. Coming to us with the same offer for the umpteenth time, when we have repeatedly rejected it and asked you not to do so, is bad faith in my book.

(*Id.* at 5.) Plaintiff's counsel concluded his email by stating that "we intend to add a claim of discrimination based on nationality and/or ethnicity based on the 'Syrian' issue that you described today as one basis, according to your clients, behind her termination." (*Id.* at 6.)

In an email response at 7:29 p.m., Defense counsel cautioned against "amending a complaint based on a statement made . . . during a settlement call by [Defendant's] lawyer versus direct knowledge or information known to [Plaintiff]." (*Id.* at 4.)

3

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on December 27, 2024, alleging retaliation and discrimination based on age and national origin. (Compl.) She contends that "Defendant terminated her because of her age and because she is of non-Syrian Jewish descent." (Opp. at 1.) Paragraph 12 of the Complaint states:

> Defendant's authorized representative has explicitly stated that Defendant has a preference for employing Jews of Syrian descent, thereby admitting that Defendant discriminates against employees of non-Syrian national origin.

Paragraph 24 of the Complaint states:

> On or about May 23, 2024, Plaintiff was advised by Defendant's attorney that a major reason for her termination was her alleged lack of understanding of the Syrian Jewish community, which constitutes a significant portion of the student body. However, as Defendant's Director of Marketing and Communications for approximately nine years, Plaintiff enjoyed years of successful interactions with the school's significant Syrian-Jewish parent body, for which she was regularly praised.

Defendant filed the Motion and was then granted leave to file an amended memorandum of law after Plaintiff's counsel informed Defense counsel that he had made a recording of the Call. (*See* Dkt. 12.) Plaintiff filed the Opposition on March 26, 2025, and Defendant replied on April 2, 2025 ("Reply," Dkt. 15).

Oral argument was held on August 7, 2025. (*See* Tr. Oral Arg., Dkt. 21.)

## DISCUSSION

### I. Legal Standards

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"To prevail on a motion to strike, the movant must show [that] (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 264 (E.D.N.Y. 2021) (quoting *Jalayer v. Stigliano*, 420 F.

4

Supp. 3d 58, 64 (E.D.N.Y. 2018)).  In moving to strike, Defendant bears a "heavy burden." *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330 (S.D.N.Y. 2025).

"[I]t is well-settled that Rule 12(f) motions are not favored and will not be granted unless it is clear that the allegations in question have no possible bearing on the subject matter of the litigation." *Collier v. Boymelgreen Devs.*, No. 06-CV-5425 (SJ), 2008 WL 835706, at *10 (E.D.N.Y. Mar. 28, 2008) (internal quotation omitted).  Since the adoption of Rule 12(f), there is "general judicial agreement, as reflected in the extensive case law on the subject, that [motions to strike under Rule 12(f)] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-CV-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013) (alteration original).  "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Federal Rule of Evidence 408(a) prohibits the use of compromise offers and negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  In particular, it defines those discussions as:

> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or a statement made during compromise negotiations about the claim . . . .

FRE 408(b) provides, however, that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

5

"[P]recedent instructs against applying the Federal Rules of Evidence at the pleadings stage, including on motions to strike." *Westwide Winery*, 511 F. Supp. 3d at 265 (citing *Ricciuti v. N.Y.C Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). "Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893.

A court may—but is not required to—strike allegations from pleadings where they otherwise may be inadmissible at trial. *See Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 400 (S.D.N.Y. 2021) (declining to strike an exhibit and allegations involving an email chain that defendant argued was settlement communication inadmissible under Rule 408); *see also Boymelgreen Devs.*, 2008 WL 835706, at *10 ("[T]he Court may strike [settlement statements] as immaterial and/or prejudicial if those statements would be inadmissible at trial.").

**II.   Application of Facts to Law**

    **A. Whether The Call Was Settlement Communication**

Defendant argues that the allegations in the Two Paragraphs should be stricken because they "impermissibly contain information obtained by Plaintiff's counsel through confidential settlement communications with [Defense counsel]" and because they "are not based upon direct knowledge of the Plaintiff and are, therefore, improper as currently alleged." (Def. Mem. at 1.) Defendant contends that "upon close review of the recording submitted to the Court, it is clear that the entire conversation was intended to be in furtherance of settlement." (Reply at 3.) It further states that, "[a]s with all settlement discussions, explanations were offered for Plaintiff's termination. The intention of communicating this information to [Plaintiff's counsel] was to encourage Plaintiff to understand the

6

many factors that led to Plaintiff's termination, none of which were discriminatory." (Def. Mem. at 4; *see also* Reply at 3.)

Plaintiff contends that the Call was not a settlement discussion (Opp. at 1) and that the Two Paragraphs would not be inadmissible under Rule 408. (*Id.* at 8–9.) She argues that Defense counsel "clearly communicated that the purpose of the call was to discuss the investigation, not to negotiate a settlement," and, therefore, these communications were not a part of settlement discussions and are not protected by Rule 408. (Opp. at 2.)

Almost all of the Call consisted of counsel sharing and disputing facts and evidence in support of the parties' claims and defenses. No mention is made at the outset of the Call that it was for settlement purposes only. *See, e.g.*, *My Mavens LLC v. Grubhub, Inc.*, No. 20 CIV. 4657 (PGG), 2023 WL 5237519, at *11 (S.D.N.Y. Aug. 14, 2023) (finding communication to be protected by Rule 408 where the letter bore "For Settlement Purposes Only FRE408"). Such a clarification would reasonably be needed in light of the last communication before the call, Plaintiff's counsel's May 15, 2024 email, in which Plaintiff rejected Defendant's offer and stated her intention not to negotiate further (Pl. Emails at 11).

Moreover, it was not until the end of the Call that Defense counsel asked Plaintiff's counsel to repeat the prior settlement offer to Plaintiff. Thus, no compromise negotiations occurred before then.

The Court finds, therefore, that the conversation between counsel on the Call during which Defense counsel made the statement that forms the basis of the Two Paragraphs does not constitute "settlement communications" within the meaning of Rule 408. *See Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 261 (E.D.N.Y. 2019) (finding "admissible [a conversation between parties] primarily because the purpose of the meeting was . . . [not] an offer of settlement or compromise").

7

### B. Defendant's Public Policy Argument

Defendant contends that not striking the Two Paragraphs "would chill attorneys from having candid conversations with opposing counsel regarding settlement." (Reply at 4.) Public policy, however, also supports encouraging the explicit delineation of settlement discussions, so that counsel can understand when such discussions begin and end.

### CONCLUSION

Because the Court finds that Defense counsel's statements about Plaintiff during the Call did not constitute a settlement discussion protected by FRE 408, Defendant has failed to meet its burden under Rule 12(f) to demonstrate a strong reason to strike the Two Paragraphs, and the Motion is denied.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
       August 29, 2025